**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN on behalf of himself and others similarly situated, | ) | 1:10-cv-7725 |
| Plaintiff, | ) | Judge St. Eve |
| | ) | Magistrate Judge Gilbert |
| v. | ) | |
| | ) | JURY DEMANDED |
| BUREAU OF COLLECTION RECOVERY, LLC, | ) | |
| Defendant. | ) | |
| | ) | |

**AMENDED COMPLAINT**

**CLASS ACTION**

1.      Plaintiff Nicholas Martin brings this action against Bureau of Collection Recovery, LLC ("BCR") to secure redress for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq.

2.      The defendant debt collection agency has engaged in multiple impermissible autodialed and prerecorded message "robocalls" to plaintiff and others' cell phones, in violation of 47 U.S.C. §227(b). It called plaintiff on his cellular telephone more than sixty times. More than forty of those calls were made using the challenged equipment after BCR had received a communication from plaintiff requesting that he not be contacted by telephone.

3.      What is more, none of the nineteen prerecorded messages BCR left on plaintiff's cellular telephone voice mail for which plaintiff has copies disclose that BCR is a debt collection agency, as required by the FDCPA, 15 U.S.C. §1692e(11).

**JURISDICTION AND VENUE**

4.      The Court has federal question jurisdiction over the FDCPA and TCPA claims.  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005).  If Brill were to be abrogated or overruled, there is supplemental jurisdiction over the TCPA claims.

5.      Venue is proper because a substantial portion of the events complained of occurred in this District.

**PARTIES**

6.      Plaintiff is an individual who resides in this District.   Plaintiff's cellular telephone number is 630-xxx-3271.

7.      BCR is a debt collection agency located in Minnesota.

**FACTS**

8.      The TCPA prohibits the use of "automatic telephone dialing systems" to call cellular telephones.  47 U.S.C. §227.

9.      BCR used an automatic telephone dialing system to call plaintiff and the class, in violation of the TCPA.

10.      BCR left recorded messages for plaintiff and the class, which constituted independent violations of the TCPA, regardless of whether an automatic telephone dialing system was used.

11.      For purposes of this complaint, the term "Dialer" refers to a system that has the capacity to dial numbers without human intervention.  In other words, the Dialer, rather than a human being, dials the telephone numbers.

12. Upon information and belief, based upon <u>Exhibit A</u>, BCR has at least four telephone systems that it uses for calling debtors, all of which are located in Minnesota; two in Edina, Minnesota and two in Eden Prairie, Minnesota.

13. Each of BRC's four "Avaya" telephone systems listed in Exhibit A are "Dialers" as defined above.

14. Upon information and belief, most of the telephone calls made through BCR's Dialers are made as part of a dialing campaign. This means that a representative of BCR selects a group of persons or accounts to call based upon certain criteria.

15. Upon information and belief, the Dialer(s) are capable of deciding when a debt collection call will likely be effective to collect a debt for a particular debtor/number (for example, when the debtor is likely near her telephone), and dials the telephone numbers according to this determination. The dialers are thus capable of deciding when to dial a call.

16. When someone answers a call made during a campaign, either the call is forwarded to an operator (likely to happen if there is an operator available), or a prerecorded message is played, as what happened with BCR's call to plaintiff on November 5, 2010, even though plaintiff answered the call. Upon information and belief, the dialer was programmed so that none of the calls to plaintiff would have been transferred to a live agent had plaintiff answered.

17. Plaintiff's cellular telephone number is 630-xxx-3271. Plaintiff owns this phone, and is the only person listed as a subscriber for this cellular telephone account. There are no other phone lines on this account.

18.    BCR received plaintiff's cellular phone number, 630-xxx-3271, through performance of an Inovis skip trace.  BCR did not receive this phone number from any creditor and did not receive this number from plaintiff directly.

19.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 7/12/2010 at approximately 12:55.

20.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 7/13/2010 at approximately 12:41. BCR played an automated message during this call.

21.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 7/14/2010 at approximately 13:22. BCR played an automated message during this call.

22.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 7/15/2010 at approximately 12:16.  BCR played an automated message during this call.

23.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 7/16/2010 at approximately 14:34. BCR played an automated message during this call.

24.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 7/19/2010 at approximately 12:18.

25.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 7/20/2010 at approximately 12:21. BCR played an automated message during this call.

26.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 7/21/2010 at approximately 11:24. BCR played an automated message during this call.

27.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 7/22/2010 at approximately 14:07. BCR played an automated message during this call.

28.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 7/23/2010 at approximately 18:47. BCR played an automated message during this call.

29.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 7/26/2010 at approximately 12:57. BCR played an automated message during this call.

30.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 7/27/2010 at approximately 13:18. BCR played an automated message during this call.

31.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 7/28/2010 at approximately 15:10. BCR played an automated message during this call.

32.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 7/29/2010 at approximately 13:10. BCR played an automated message during this call.

33.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/2/2010 at approximately 11:17. BCR played an automated message during this call.

34.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/3/2010 at approximately 12:41.

35.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/4/2010 at approximately 20:18.

36.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/5/2010 at approximately 17:30. BCR played an automated message during this call.

37.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/6/2010 at approximately 17:30. BCR played an automated message during this call.

38.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/10/2010 at approximately 15:41. BCR played an automated message during this call.

39.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/11/2010 at approximately 19:34. BCR played an automated message during this call.

40.     On August 13, 2010, BCR received a phone call with respect to the alleged debt of plaintiff.  This call was initiated by plaintiff.

41.     Plaintiff told the BCR representative that it should change its address for him, and that he could be reached by mail at a post office box address.  The representative told plaintiff that a validation letter would be sent to that address, and indicated that plaintiff's address had been updated in defendant's system.

42.     On August 13, 2010, BCR already had plaintiff's PO box address in its system, but had never sent a notice of plaintiff's validation or verification rights pursuant to § 1692g to that address.

43.     BCR again placed plaintiff's PO box address into its computer system.  BCR did not send a validation letter to plaintiff's new address within five days of this communication. In fact, BCR never sent a validation letter to the PO box address plaintiff provided to BCR.

44.     That same day, August 13, 2010, after the phone call, plaintiff made a written demand, via facsimile, that BCR cease calling him .

45.     Plaintiff's fax requested verification of the debt, and also stated, among other things, "please take notice that any phone calls are inconvenient.  As such, please refrain from placing such calls."

46.     The fax number plaintiff used was that which BCR holds out as its proper facsimile number with the Minnesota Department of Commerce:  952-259-1133.  Upon information and belief, this is defendant's correct fax number.

47.     Upon information and belief, based upon the fax transmission verification report, defendant received this fax on August 13, 2010.

48.     Despite having received the fax, defendant called plaintiff on numerous occasions as delineated below, and never properly validated or verified the alleged debt.

49.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/13/2010 at approximately 17:20.

50.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/16/2010 at approximately 19:23.

51.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/17/2010 at approximately 20:22.

52.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/19/2010 at approximately 19:05.

53.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/20/2010 at approximately 18:38.

54.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/23/2010 at approximately 17:12. BCR played an automated message during this call.

55.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/24/2010 at approximately 18:23.

56.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/25/2010 at approximately 15:32.

57.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/26/2010 at approximately 15:28.

58.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/27/2010 at approximately 15:23.

59.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/30/2010 at approximately 19:37.

60.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 8/31/2010 at approximately 19:23.

61.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/2/2010 at approximately 16:33.

62.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/3/2010 at approximately 16:44. BCR played an automated message during this call.

63.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/7/2010 at approximately 20:07.

64.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/8/2010 at approximately 16:56.

65.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/10/2010 at approximately 15:47.

66.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/12/2010 at approximately 16:07.

67.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/14/2010 at approximately 16:08.

68.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/15/2010 at approximately 20:28.

69.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/16/2010 at approximately 19:27.

70.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/20/2010 at approximately 16:45.

71.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/21/2010 at approximately 18:17. BCR played an automated message during this call.

72.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/22/2010 at approximately 17:16. BCR played an automated message during this call.

73.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/23/2010 at approximately 14:51.

74.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/24/2010 at approximately 9:49.

75.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/27/2010 at approximately 10:05.

76.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/28/2010 at approximately 16:17.

77.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/29/2010 at approximately 9:00.

78.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 9/30/2010 at approximately 19:56.

79.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 10/4/2010 at approximately 9:43.

80.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 10/5/2010 at approximately 19:20.

81.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 10/7/2010 at approximately 12:04.

82.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 10/12/2010 at approximately 10:16.

83.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 10/13/2010 at approximately 15:38.

84.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 10/20/2010 at approximately 19:06.

85.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 11/2/2010 at approximately 20:16.

86.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 11/5/2010 at approximately 9:20.  BCR played an automated message when plaintiff answered this call.

87.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 11/17/2010 at approximately 19:18. BCR played an automated message during this call.

88.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 11/18/2010 at approximately 19:32.

89.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 11/29/2010 at approximately 19:08.

90.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 11/30/2010 at approximately 20:16. BCR played an automated message during this call.

91.    This lawsuit was originally filed on December 6, 2010.

92.    BCR called plaintiff at 630-xxx-3271 using its Dialer on 12/7/2010 at approximately 15:21.

93.     This lawsuit was served upon BCR's registered agent on December 10, 2010.

94.     BCR called plaintiff at 630-xxx-3271 using its Dialer on 12/13/2010 at approximately 18:10. BCR played an automated message during this call.

95.     In addition, there are almost certainly more calls of which plaintiff is not aware.

96.     Upon information and belief, BCR used one of the Dialers described in Exhibit A for each of the calls listed above.

97.     Upon information and belief, BCR's policy practice and procedure is to have its dialer call a phone number designated as a "wrong number" at least once after BCR knows the number is a wrong number.

98.     Any calls to cell phones made with a Dialer or where a recorded message was used that were dialed *after* BCR was on notice that the number dialed was a "wrong number" would be class members.

99.     There are more than 10,000 persons that fall within the following criteria: Persons with area code 630 cell phone numbers that defendant or some person on its behalf called between and including December 6, 2006, and December 6, 2010.

100.    Upon information and belief, defendant has called more than 100 cellular numbers within the 630 area code in 2010, using one of its Dialers.

# COUNT I – TCPA

101.    Plaintiff incorporates all previous paragraphs of this complaint.

102.    It is a violation of the TCPA, 47 U.S.C. §227(b) to call a person's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice message.

103.     Plaintiff and the class are entitled to have their rights, status and legal relations under the TCPA relating to defendant's calling of cell phones using an automatic dialing system and/or artificial or prerecorded voice message.

104.     The defendant's calls were negligent, or alternatively, they were willful.   47 U.S.C. §312(f)(1).

## **Class Allegations**

105.     Plaintiff brings Count I on behalf of a class and a subclass, which consists of:

All persons with area code 630 telephone numbers who defendant or some person on its behalf called on their cell phone and used a prerecorded or artificial voice message, where defendant obtained the phone number called through skip tracing or other similar means and cannot prove that it had the prior express consent of the called party, where any call was made between and including December 6, 2006, and December 6, 2010.

Plaintiff alleges a subclass of persons who defendant called using the proscribed equipment after defendant had been instructed to stop calling.

106.     Although the class is defined to include only persons who received prerecorded or artificial voice messages, that distinction is for class definition purposes, only.  Plaintiff seeks damages for both violations arising out of making calls using an "automatic telephone dialing system" and prerecorded or artificial voice message, for each call to any class member.

107.     Upon information and belief, based upon industry practices, defendant called more than 100 cell phone numbers with 630 area codes during 2010, where defendant obtained the cell phone number through a skip trace.

108.     Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting any individual member of the class, including plaintiff. Such questions common to the Class include, but are not limited to:

      a.     Whether defendant used an automatic telephone dialing system or prerecorded or artificial voice message as those terms are defined in the TCPA and applicable FCC regulations and orders;

      b.     Whether obtaining a cellular telephone number through a skip trace, or means other than directly from the debtor, constitutes "prior express consent" for defendant to call that number using an automatic telephone dialing system or prerecorded or artificial voice; and

      c.     Damages, including whether the violation was willful.

109. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no interests that might conflict with the interests of the class. Plaintiff is interested in pursuing his claims vigorously, and has retained counsel competent and experienced in class and complex litigation.

110. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

111. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

112. Defendant has acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual members of the class, should they realize their rights have been violated, would

likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

113.    The identity of the class is likely readily identifiable from defendant's records.

114.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of himself and the class and against defendant that provides the following relief:

a.    Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful;

b.    A permanent injunction prohibiting defendant from violating the TCPA in the future through calling cellular phones using an automatic telephone dialing system and/or a prerecorded voice message; and

c.    Any other relief the Court finds just and proper.

## COUNT II – FDCPA

115.    Plaintiff incorporates all previous paragraphs of this complaint.

116.    Defendant left voice mails for plaintiff that did not include the "we are a debt collector" language required by 15 U.S.C. §1692e(11), and therefore violated the FDCPA.

117.    Defendant called plaintiff in attempts to collect an alleged debt when it knew or should have known that plaintiff had never received notice required by 1692g.

118.    Defendant continued calling plaintiff after it had received a demand to stop doing so in violation of 1692b.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of himself against defendant that provides the following relief:

    a. Statutory damages;

    b. Attorney's fees and costs of suit; and

    c. Any other relief the Court finds just and appropriate.

## COUNT III – FDCPA

119. Plaintiff incorporates all previous paragraphs of this complaint. This Count is brought as a separate but related proceeding, because it involves similar facts and the same parties, but the cause of action arose after the original complaint in this case was filed.

120. Defendant's December 13, 2010, phone call to collect a debt from plaintiff was made after defendant had been served with the original complaint in this action.

121. Defendant thus contacted plaintiff when it had actual knowledge that plaintiff was represented by the undersigned, in violation of 15 U.S.C. §1692b(6).

122. This call was also after defendant had actual knowledge, through the original complaint, that plaintiff had never received a validation notice pursuant to 15 U.S.C. §1692g.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of himself against defendant that provides the following relief:

    a. Statutory damages;

    b. Attorney's fees and costs of suit; and

    c. Any other relief the Court finds just and appropriate.

                Respectfully submitted,

/s/Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

**JURY DEMAND**

Plaintiff demands trial by jury.

/s/Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that the defendant take affirmative steps to preserve all recordings, data, emails, recordings, documents and all other tangible things that relate to the allegations herein, plaintiff or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

/s/Alexander H. Burke

# Exhibit A